FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11:53 am, Sep 04, 2024
JEFFREY P. COLWELL, CLERK

# UNITED STATES DISTRICT COURT

for the

__________ District of __________ ˙ado

__________ Division

| | |
|---|---|
| Alea R. Kennedy<br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>**-v-**<br>Greystar Real Estate Partners, LLC; GREP Southwest, LLC, d/b/a Glen Park Aurora Apartments, LLC<br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 1:23-CV-03328-RTG<br>*(to be filled in by the Clerk's Office)*<br>Jury Trial: *(check one)* ☒ Yes ☐ No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

#### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Alea R. Kennedy |
| Street Address | 1101 Tropicana #2121 |
| City and County | Las Vegas, Clark |
| State and Zip Code | NV 89119 |
| Telephone Number | 234-650-1977 |
| E-mail Address | aleamoore@gmail.com |

#### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Greystar Real Estate Partners, LLC |
| Job or Title *(if known)* | |
| Street Address | 465 Meeting Street, Suite 600 |
| City and County | Charleston, Charleston |
| State and Zip Code | SC 29403 |
| Telephone Number | 843-579-9400 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | GREP Southwest d/b/a Glen Park Apartments, LLC |
| Job or Title *(if known)* | |
| Street Address | 208 S Jasper Cir |
| City and County | Aurora, Arapahoe |
| State and Zip Code | CO 80017 |
| Telephone Number | 719-496-4932 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**C. Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Glen at the Park Apartments |
| Street Address | 298 S Jasper Cir |
| City and County | Aurora, Arapahoe |
| State and Zip Code | CO 80017 |
| Telephone Number | 719-496-4932 |

## II. Basis for Jurisdiction (in complaint)

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☒ Relevant state law *(specify, if known)*:

C.R.S. Section 34-24-400 et. seq.

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☐ Retaliation.
- ☐ Other acts *(specify)*: Harassment, imposition of disability where erroneously regarded

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

Please see complaint

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race
- ☐ color
- ☐ gender/sex Female; harassment/discriminatio
- ☐ religion Judaism: experienced antisemitism
- ☐ national origin Russian of royal heritage
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☐ disability or perceived disability *(specify disability)*

Regarded as being mentally ill

E. The facts of my case are as follows. Attach additional pages if needed.

Please see my amended complaint, attached.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

11/1/23 upon Substantial Weight Review; otherwise duly charged with the CCRD.

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* 12/4/23 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 9/4/24

Signature of Plaintiff [signature]

Printed Name of Plaintiff Alea Kennedy

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address



Print Save As... Add Attachment Reset

| | |
|---|---|
| UNITED STATES DISTRICT COURT,<br>STATE OF COLORADO<br>901 19th St, Room A105, Denver, CO 80294-3589<br><br>Plaintiff: ALEA R. KENNEDY,<br><br>v.<br><br>Defendants: GREYSTAR REAL ESTATE PARTNERS, LLC; GREP SOUTHWEST, LLC d/b/a GLEN PARK AURORA APARTMENTS, LLC | ▲ COURT USE ONLY ▲<br><br>Case No.: 1:2023-cv-03328<br>Division: -RTG |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

## NATURE OF THE ACTION

This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and Colorado's Anti-Discrimination Act ("CADA"), and the Americans with Disabilities Act ("ADA"), to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Alea R. Kennedy, who was adversely affected by such practices.

As alleged with greater particularity below, Plaintiff Alea Kennedy alleges that Defendants Greystar Real Estate Parmers, LLC and GREP Southwest, LLC, "Glen at the Park,". unlawfully discriminated against the Plaintiff on the basis of their erroneous regarding of disability where

none has ever presented, and imposition thereof; in retaliatory, adverse employment action against Ms. Kennedy. The Plaintiff further alleges that Defendants unlawfully discriminated against Ms. Kennedy because of that erroneous assumption of disability, and imposed a disability as a result of that assumption; notwithstanding her actual and ADHD disability. The Plaintiff alleges that Defendants imposed such discrimination, and disability, as an outgrowth of Defendants' intolerance for her religion, for her sex, and for engaging in protected activity when she requested medical accommodation.

**JURISDICTION, PARTIES, AND VENUE**

1. The Plaintiff, Alea R. Kennedy, was a resident of Arapahoe County at the time that the factual nexus of events transpired, and now resides in Las Vegas, Nevada.

2. Greystar Real Estate Partners, Inc., ("Greystar") is a corporation with its principal place of business in Charleston, South Carolina, incorporated in Delaware; but doing business in Aurora, Colorado, by and through GREP Southwest, LLC, d/b/a Glen Park Aurora Apartments. Greystar is a private corporation, engaged in the provision of apartment rental services.

3. At all times relevant to this litigation, Defendants Greystar Real Estate Partners, LLC, GREP Southwest, LLC, Glen Park Aurora Apartments, LLC "Glen at the Park") Defendants have continuously done business in the State of Colorado; and has maintained employment of more than fifteen (15) employees. At all relevant times, Defendants has continuously been an employer engaged in an industry affecting commerce, covered under Sections 701(b), (g) and (h) of Title VII 42 U.S.C. §§ 2000e(b), (g) and (h).

4. The Court has jurisdiction over this matter in the context of C.R.S. § 24-34-306 and C.R.S. § 6-1-103. Venue in this Court is proper in the circumstance, as Defendants' employment of

Plaintiff, in violation of CADA, Title VII, and the ADA, transpired in Aurora, Colorado. C.R.S. § 24-34-306.

5. The Plaintiff has exhausted all administrative remedies prior to taking this action, as necessitated by C.R.S. § 24-34-306.

6. The Court presents specific jurisdictional capacity in the context of Defendants Glen at the Park, under *Parocha*, “an out-of-state party’s harassment of, or threatening of or attempt to coerce an individual known by the non-resident to be located in Colorado is a tortious act sufficient to establish personal jurisdiction under Colorado’s long-arm statute, C.R.S. § 13-1-124 (2007), and “that such conduct creates a sufficient nexus between the out-of-state party and Colorado to satisfy the requisite minimum contacts such that the exercise of jurisdiction by a Colorado court to enter a protection order comports with traditional notions of fair play and substantial justice.” 2018 CO 41, quoting *Parocha v. Parocha*, 17SC406. Under the *Magill* test, (1) Defendant’s contacts with Colorado are continuous, and systematic and significant; and (2) as such, Defendants are essentially “at home” in Colorado. *Magill v. Ford Motor Co.*, 2016 CO 57, pp. 15 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

7. This Court has jurisdiction over the subject matter of the present action, pursuant to C.R.S. § 15-10-302.

8. The Plaintiff brings this Complaint justifiably, under Colorado and federal law, and within the bounds of the stipulation that in the context of discrimination, Plaintiff herein filed suit within ninety (90) days of certain agency action; being the recipient of the two right-to-sue notices and advisements attached. 42 U.S.C. § 2000e-5(f)(1).

9. The events, transactions, interactions, and occurrences forming the factual nexus and subject matter of Plaintiff’s complaint against Defendants transpired within Colorado’s 18th

Judicial District, and whilst the Plaintiff was a resident of the 18th District of Arapahoe County, Colorado. C.R.S. § 13-1-124; C.R.S. § 15-10-302.

## ADMINISTRATIVE PROCEDURES

10. The Plaintiff has exhausted all administrative actions, prior to bringing this Complaint, attendant to C.R.S. § 24-34-306.

11. The Plaintiff's Complaint was set before the Colorado Civil Rights Division ("CCRD") on April 10, 2023.

12. The CCRD Complaint was filed on 6/22/23.

13. Plaintiff made Rebuttal on 9/15/23.

14. Plaintiff had a conversation with the CCRD's Jazmin Perez on 9/19/23, in which it was indicated to Plaintiff that the CCRD would be investigating the matter. CCRD files provided to the Plaintiff after the fact contain within their subject lines the names of intervening government agencies.

15. The Plaintiff was issued a finding of No Cause by the CCRD on 10/19/23, and requested the EEOC's Substantial Weight Review on 11/1/23.

16. The EEOC issued the Attorney General's letter in adoption of the CCRD's findings on 12/4/24, and Plaintiff filed the initial iteration of this complaint within the ninety day timeframe provided by law.

17. The EEOC's Regional Director, Jerilynn Nunu, was subsequently discovered to be housed in Plaintiff's former apartment and Airbnb business, contiguous to, and during the investigation that concerned the Plaintiff's civil rights case, and which included the situation of her apartment.

## GENERAL ALLEGATIONS

18. This case concerns Defendants Greystar, Inc., GREP Southwest, and Glen at the Park's discrimination against Alea R. Kennedy, in the context of Colorado's Anti-Discrimination Act, Title VII, and the Americans with Disabilities Act. Specifically, allowed Plaintiff to be psychiatrically tortured at the site of her employment, Glen at the Park; where Plaintiff took a cover job from March 11 to June 15, 2021, in allowing for her medical discrimination in such context of Defendants' regarding the Plaintiff as being mentally disabled where no disability had ever presented.

19. The Plaintiff was subjected to medical treatment in the workplace, as distributed by unlicensed practitioners, in unlawful and discriminatory assumption of disability. On 4/14/21, as part of her divorce, Plaintiff was interviewed for seventeen minutes by a fraudulent psychiatric practitioner, outside of Defendants' workplace. After clearing the Plaintiff of ever having had any psychiatric malady beyond insomnia, on the basis of an interview backed by fraudulent psychiatric credentialing, Defendants' agent allowed Jamie Cutright Fisher to enter the building; and to electrocute and inject the Plaintiff, at Defendants' agents' direction. The Plaintiff suffered unduly at the hands of such negligent practitioners, who treated Plaintiff in such a way with which no medical practitioner could reasonably agree, upon the basis of completely clear diagnoses; to the Plaintiff's recognizance, and as recorded.

20. After electrocuting and injecting the Plaintiff in the workplace, at Defendant's agent's behest; Cutright Fisher walked out of the Defendants' property, and slowly brought a psychiatric tool to their head, and electrocuted themselves with a psychiatric implement. The Plaintiff requested time out of the office, to recover from Cutright Fisher's psychiatric torture; and was denied such reasonable accommodation. This incident caused Defendants to regard the Plaintiff

as having a disability, where none had ever presented; and to discriminate against Plaintiff in allowing Cutright Fisher's medical treatment of Plaintiff, against medical history and advisement, throughout her employment with Defendants.

21. In an act of group hysteria, reminiscent of the Stanford Prison Experiment; Defendant's actors used Plaintiff's employment with Defendants as a means of self-legitimacy, and to normalize Petitioner's psychiatric torture. Defendants built themselves an illegal dynamic on such basis of the Plaintiff's assumed disability, in which they subjected Plaintiff to a state of subjugation in the workplace, pretexted upon their illegal assumption of a disability where none had ever existed. From the period of her employment onwards, and due to Defendants' regarding Plaintiff as disabled, the Plaintiff was been completely disallowed from using the bathroom, privately.

22. In so doing, Defendants evidenced their compromise and conversion of the employment contract that existed between the company and Plaintiff, and the company's reliances upon an alternative healthcare history; as fraudulently and negligently for Plaintiff, provided by the Plaintiff's estranged biological father, Jerry Lee Moore, in the context of his infamous case of Munchhausen's by Proxy, which precipitated the Plaintiff's designation in childhood as a Child Called It. Defendants allowed their agent in Moore to take on a formalized role, and to rape the Plaintiff in the workplace; as predicated on that erroneous assumption of disability. Defendants' agents' same-actor interference into Plaintiff's life, including on the part of Plaintiff's Ohio custody attorney taking on a role with her subsequent employer; presents as more than an inference of harassment to the Plaintiff; on the part of Defendants.

23. Defendants' propensity to traffick the Plaintiff back to the workplace, overnight and during sick leave, predicated her employment with Defendants. The Plaintiff was raped, and

passed around in mass rape; in the context of her employment, with Defendant. The prior owner died; one night, in the context of one of the episodes of the Plaintiff's trafficking, which caused this devolution of unlawful employment practices, as affected Plaintiff. The Plaintiff was never compensated for the occurrence, or for the change in ownership; in disparate, unlawful employment conduct on behalf of Defendant.

24. The Plaintiff registered concerns about unlawful employment conduct, on the part of Defendants' agents, to her management. Defendants' agents elected to attempt to perpetuate the regarding of Plaintiff as being mentally disabled, where no disability had ever presented; in retaliation to those complaints. The Plaintiff was treated in a disparate manner, to other employees; as a result of those complaints. Defendants' agents used their regarding of Plaintiff as being disabled in attempt to affect the Plaintiff in any way possible; including attempting to steal packages and commissions.

25. Following the changing of the entity's hands, the Plaintiff was in no way appraised of the circumstance, or in any way compensated for the change in ownership, or the circumstance of involvement in the company's owner's death; as were the Plaintiff's coworkers. This disparate treatment on behalf of Defendants towards Plaintiff characterized the Plaintiff's employment with Defendants, from that point forward.

26. The change in ownership allowed for a total devolution in Defendants' management of the property, in the basis of their conversion of the circumstance of Plaintiff's employment, to that of the Plaintiff's psychiatric and sexual torture; on the basis of Defendants' corporate-officialized Unitarianism. On June 10, 2021, in an effort to begin one of their characteristic sexual orgies, Defendants locked the front office; with Plaintiff, a first responder,

inside. As a result of Defendant's agents withholding of a provision of services, a resident died attempting to climb into his balcony, through a lockout.

27. The Plaintiff would not have been retaliated against but for the Defendants' assumption of a disability in Plaintiff where none has ever applied; and the Plaintiff was retaliated and discriminated against, throughout her employment and in the context of her layoff, for being a Jewish intelligence agent, and woman who resisted sexual advances—even as she became actually physically disabled, as direct result of Defendants' erroneous assumption of disability.

28. The Plaintiff was discriminated against on the basis of her sex. But for Defendant's agents pretending that the Plaintiff had endured a mental health history that she had not, the Plaintiff would not have been exposed to her Colorado custodial attorney's situation in her cover job's workplace; which resulted in the compromise of her custodial dynamic, pretensed on the same, erroneous mental health history. The Plaintiff has endured her current custodial opposition taking a formal role at her ensuing employer; as a result of Defendant's adverse employment action towards the Plaintiff, in this matter.

28. As such, Defendants discriminated against the Plaintiff in the course of her employment, and retaliated against the Plaintiff in their harassment, and disallowance of time off. Defendants committed such retaliatory and discriminatory acts in defiance of Colorado's Anti-Discrimination Act, Title VII, and the Americans with Disabilities Act; and so Plaintiff brings this claim for relief before the Honorable Court.

## <u>CLAIMS FOR RELIEF</u>

### FIRST CLAIM FOR RELIEF

***Violation of the Americans with Disabilities Act 42 U.S. Code § 12102(3)(C) - Regarded as having an impairment in retaliatory discrimination***

29. Plaintiff realleges and incorporates the legal and factual basis contained in all paragraphs of this Complaint.

30. At all times relevant to the factual circumstance described in the context of this litigation, Defendants engaged in unlawful employment practices, in violation of 42 U.S. Code § 12102(3)(C). Specifically, Defendants discriminated against the Plaintiff in assuming a disability in Plaintiff; regarding the Plaintiff as being mentally disabled where no disability had ever presented. Defendants imposed a disability on such basis, which substantially limited Plaintiff in such a way as to interfere with her everyday activities. Those psychiatric disabilities as assumed by Defendants were actually imposed upon the Plaintiff, by Defendants; as a result of their erroneous assumption of disability in the Plaintiff, in unlawful employment discrimination.

31. Defendants harassed the Plaintiff in furtherance of the regarding of Plaintiff as being mentally disabled, where no disability has ever presented; and in so doing, imposed an actual mental impairment, which substantially limits the Plaintiff's quality of life, and which has endured for more than six months.

32. Defendants objectively treated Plaintiff differently, as a result of their erroneous assumption of disability, as defined in 42 U.S. Code § 12102(3)(A), in the Plaintiff; resulting in adverse employment action taken by Defendants. Those actions included the withholding of pay, including commissions; which were withheld from the Plaintiff on the basis of discrimination.

33. Months Defendants further imposed on Plaintiff an exacerbated ADHD disability (other than that which preexisted the injury), in the severe injuries, of a psychiatric and neurological nature, incurred by Plaintiff on behalf of Defendants' agent; over which Defendants retaliated against Plaintiff, when they effectively Plaintiff's employment through discriminatory treatment, following her engaging in protected activities. Defendant imposed such retaliations, and restrictions on the Plaintiff's employment, as a result of their erroneous regarding of Plaintiff as being disabled.

34. The Plaintiff has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment.

35. The Plaintiff engaged in statutorily protected conduct, for which she deserved reasonable accommodation, when she asked for time off to convalesce, through the catastrophic injury induced by Defendant's agent, Jamie Cutright Fisher, and through Defendant's ensuing retaliation against Plaintiff. The Plaintiff had also been forced to work through the inducement of injury and sick leave to interact with Defendant's agents in the office, which set the standard for such discriminatory practice.

36. The Plaintiff alleges retaliation and discrimination against the Plaintiff, by Defendants, on the basis of disability, and as a direct result of the imposition by Defendants; as defined under this act. The Plaintiff endured illegal employment activities for the duration of her tenure at Glen at the Park, which were discriminatory in nature.

37. Defendants retaliated against Plaintiff, on the basis of discrimination, when they constructively dismissed the Plaintiff, allowing for unlicensed treatment of the Plaintiff during the workday, on the basis of their regarding of Plaintiff as being disabled; where no disability had ever presented. Plaintiff alleges that such erroneous regarding of disability was made on the basis of Defendants' discrimination towards the Plaintiff.

38. The Plaintiff stated no disability, or history thereof, on her employment application. The Plaintiff had never experienced a mental health episode, whatsoever; and was being instead assaulted in the workplace and in the course of her employment, as condoned and encouraged by Defendants, in furtherance and actualization of the custodial court's due process violation.

39. Plaintiff alleges that she was subjected to actions prohibited because of an actual or perceived physical or mental impairment. Defendants would not have retaliated against Plaintiff

but for that erroneous assumption of disability; with the Plaintiff having accreted such evidence of discrimination, over the course of her employment.

40. The Plaintiff asserts that she was competently able to perform the essential functions of her job, with or without the allowance of time off from the office; which Defendants withheld, in furtherance of their retaliatory discrimination against the Plaintiff.

41.The unlawful practices complained of were intentional, and were performed by Defendants with malice and reckless indifference to the federally-protected rights of the Plaintiff.

**SECOND CLAIM FOR RELIEF**

***Violation of Colorado Anti-Discrimination Act C.R.S. § 34-24-400 et. seq.***

42. Plaintiff herein incorporates the legal and factual basis contained in all other paragraphs of this Complaint.

43. At all times relevant to this Complaint, Defendants were defined as an Employer, under C.R.S. § 34-24-401(3).

44. At all times relevant to this Complaint, Plaintiff was defined as an Employee under C.R.S. § 34-24-401(2).

45. As the Plaintiff's employer, Defendants had a duty in non-discrimination on the basis of an assumed disability where none had ever existed; and imposed disabilities where none had ever existed, in the course of their discrimination. Defendants discriminated against Plaintiff in the workplace, and such discrimination was done with malice and reckless indifference to the rights of the Plaintiff.

46. As the Plaintiff's employer, Defendants had a duty in non-harassment of the Plaintiff in the context of such assumed disability; and breached that duty, in subjecting Plaintiff to assaults by Defendants' agents. Defendants created an environment in which its agents were aided,

abetted, incited, compelled, and coerced into applying discriminatory and unfair practices to the Plaintiff, and the hostility to Plaintiff was constant.

47. Defendants created a hostile work environment based on the Plaintiff's race, national origins, sex, disabilities (in their erroneously regarding Plaintiff as being disabled, and actually imposing those disabilities on such basis), and religion. Harassment towards the Plaintiff presented as an opproprobus of hostility, which took place both in the workplace and in the Plaintiff's apartment; and is proven beyond inference at the evidenced stalking of Plaintiff by Defendants' agents, in harassment against the Plaintiff; made in furtherance of Defendants' efforts to have Plaintiff continuously, erroneously regarded as being disabled on a mass scale, in post hoc ergo propter hoc fallacy.

48. Defendants had a statutorily imposed duty to not refuse to list and properly classify Plaintiff for employment in the context of her own, known and available job, for which Plaintiff was already qualified; because of her sex, religion, and national origin, and disabilities, which they perceived or erroneously regarded in the Plaintiff as having. The Plaintiff was inhibited from promotions and commissions, as a result of Defendants' discrimination against Plaintiff.

49. As the Plaintiff's employer, Defendants had a duty of non-retaliation to the Plaintiff on the basis of wage and pay; in the context of the assumption of a disability that undermined her employment, which Defendants failed to uphold.

50. As the Plaintiff's employer, Defendants violated their duty of non-retaliation to the Plaintiff on the basis of sex; in the context of the assumption that Plaintiff would work through an imposed disability that undermined her employment, and being as how Defendants were aware that Plaintiff was fighting for the custody of her child. But for the Plaintiff's sex status,

Defendants would have had no reason to include actors associated with the custodial court; and therefore no pretense for discrimination.

51. As the Plaintiff's employer, Defendants violated a duty of non-retaliation to the Plaintiff on the basis of sex and religion; in the context of the assumption of a disability that undermined her employment, and where the Plaintiff was discriminated against for her non-acceptance of Defendants' corporate-officialized Unitarian sexual practices, which included group sex overnight, and public, group sex in the workplace. But for the Plaintiff's status as a woman and Jew, she would not have been retaliated against, at Glen at the Park.

52. Defendants discriminated against Plaintiff in including opposing counsel in her custodial matter in the course of the conduct of their business; which has no other explanation beyond the discrimination of the Plaintiff, by and through the pretense of an illegal unfair workplace practice, itself predicated on Defendants' workplace-officialized religious practice of the sexualization of medicine, and erroneously applied to the Plaintiff.

53. Defendants violated their duty to not discriminate in unfair workplace practices towards Plaintiff; including, but not limited to, Defendants' actions having harmed the Plaintiff's status as an employee, including in the context of terms, conditions, and privileges as an employee, in their retaliatory discrimination against the Plaintiff.

54. Defendants failed in their duty to act on Plaintiff's complaints of discrimination, when they were filed with the relevant authorities. Defendants failed to initiate a reasonable investigation, or proper remediation, of any such complaints; and opportuned, instead, to disqualify the Plaintiff for the position for which she was qualified, in erroneous assumption and ensuing imposition of disability.

**THIRD CLAIM FOR RELIEF**

***Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. - Retaliation, Discrimination, and Harassment; Based on Religion, Sex, and National Origin***

55. The Plaintiff hereby incorporates and restates all allegations contained in all paragraphs of this Complaint as though fully incorporated herein.

56. Plaintiff Ms. Kennedy is an "employee" as that term is defined at 42 U.S.C. § 2000e(f).

57. Defendants are an "employer" as that term is defined at 42 U.S.C. § 2000e(b).

58. Title VII prohibits discrimination based on sex, religion, and national origin; and based on the above-described acts, practices and omissions, Defendants engaged in unlawful discrimination under Title VII on those bases.

59. At all times during the course of Plaintiff's employment, Plaintiff met or exceeded Defendants' legitimate job expectations. The fact of the matter of her capacity in the role was affirmed in her positive performance reviews, with assurances given continuously by Defendants' agents.

60. Defendants' conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive. The intimidating, hostile, and abusive unlawful employment conduct to Plaintiff was severe and lasted over time, presenting as more than the occasional off-color remark.

61. Plaintiff alleges that such hostile work environment was predicated on Defendants' workplace-officialized religion, being Unitarianism; and that the psychiatric-sexual torture that Defendants' agents inflicted upon Plaintiff was made on the basis of Plaintiff's religious difference, which was known to Defendants in the Plaintiff's complaints of unlawful employment conduct.

62. Plaintiff alleges discrimination on the basis of her sex; where the Plaintiff was made to work through injury in Defendants' failure to make reasonable accommodation, in the context of their psychiatric injury to Plaintiff.

63. The Plaintiff further alleges discrimination on the basis of sex, on the basis of her childbirth having resulted in Defendants' association with her Colorado custodial adversaries and representation, resulting in retaliation against the Plaintiff.

64. At the time the above-described conduct occurred, including Defendants' agents' sexual harassment of the Plaintiff; and as a result of such conduct, Plaintiff believed her work environment to be hostile or abusive. The Plaintiff's taking concerns of retaliation to Defendants' agents qualify as protected activity, where she conveyed to Defendants her concern that the Defendants had engaged in an unlawful, discriminatory practice in the medical and sexual harassment that Plaintiff had endured, in the inclusion of her estranged biological father in the workplace; Defendants retaliated, inwithholding pay.

65. Plaintiff further alleges discrimination on the basis of the sexual harassment dealt by her manager, who acted as a predator; in the context of the disability imposed in the erroneous regarding of Plaintiff as being disabled. The Plaintiff engaged in statutorily protected conduct on or about May 1, 2021, when she refused to respond to her superior's sexual advances. Plaintiff's informal and formal opposition and complaints regarding Defendants' illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, et seq.

66. Defendants' discrimination against Plaintiff on the basis of her being Jewish resulted in their retaliation, for not joining the company-officialized religious practices. The Plaintiff endured retaliatory behavior when she was trafficked by coworkers to the workplace, for

Defendants' workplace-officialized sexual purposes. Defendants incited a pretext of violence against the Plaintiff, on such basis of religious difference and intolerance.

67. Plaintiff alleges discrimination on the basis of her national origin; where she was known to her peers as a Russian (of royalty), and alleges the incitement of an pretext of violence against the Plaintiff, on such basis, by Defendants.

68. A causal connection exists between Plaintiff's protected activities and Defendants' unlawful retaliation. Defendants contemporaneously with, and/or immediately subsequent to Plaintiff's protected activities, subjected Plaintiff to intentional, cumulative, and adverse employment.

69. Defendants intentionally subjected Plaintiff to intentional and unlawful Title VII retaliatory discrimination, in the withholding of Plaintiff's pay and commissions.

70. This intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendants' officials, supervisors, and/or managers.

71. Defendants subjected Plaintiff to less favorable terms, conditions and privileges of employment because she reported discrimination on the basis of her assumed disability to Defendants' agents.

72. As such, Defendants violated 42 U.S.C. § 2000e-2(a) and discriminated against Plaintiff by not only subjecting her to sufficiently severe or pervasive harassment based on her sex, but also failing to act and condoning or tolerating such harassment, and subjecting Plaintiff to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiff, including the withholding of commissions.

73. In unlawfully discriminating and retaliating against Plaintiff, Defendants acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under law, thereby necessitating the imposition of exemplary damages.

74. In each context of retaliation aforementioned, the Plaintiff has demonstrated a causal connection existent between the protected activity, and the adverse employment actions, culminating in Defendants' discrimination; which occurred on a continual and daily basis, in advance of her constructive dismissal, and following her departure from the company.

75. The unlawful practices complained of above have deprived the Plaintiff of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability status, religious beliefs, and her sex.

76. As a result of Defendants' retaliatory conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience; and is entitled to general and special damages, and economic damages including front and back pay.

77. Plaintiff is also entitled to and seeks her attorneys' fees and costs, pursuant to 42 U.S.C. §2000e-5(k).

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests that this Honorable Court enter judgment in her favor, and grant her relief as allowed by law and equity; including, but not limited to;

(a) Declaratory and injunctive relief, as appropriate,

(b) Past and future economic losses on all claims allowed by law, including but not limited to lost earnings, medical expenses, and moving expenses, in an amount to be determined at trial;

(c) Compensatory and consequential damages, including, but not limited to, damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law an amount to be determined at trial;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(f) Pre- and post-judgment interest at the lawful rate;

(g) The provision of appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including but not limited to back pay, front pay, and interest on back pay. The provision of compensation for past pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial. The provision of compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life and loss of civil rights, in amounts to be determined at trial. The ordering of the payment of punitive damages for Defendant's willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial;

(g) Any further relief that this Court deems just and necessary, in public interest.

## JURY DEMAND

The Plaintiff demands a jury on all issues so triable.

## ATTACHMENTS

**● Exhibit A - All administrative charges related to this Complaint; Colorado Attorney General's Determination and Advisement of Plaintiff's Right to Sue; United States Attorney General's Advisement of Plaintiff's Right to Sue**

Dated this 29th day of August, 2024.

Respectfully submitted,

Alea Kennedy, Plaintiff
1101 Tropicana #2121
Las Vegas, NV 89119

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

1560 Broadway Street, Suite 825
Denver, CO 80202

PLAINTIFF'S EXHIBIT
tabbies
A

June 22, 2023

Attn: Modivcare Solutions, LLC
6900 E Layton Avenue
Suite 1200
Denver, CO 80249

Charge Number: E2300019428

Alea Kennedy v. Modivcare Solutions, LLC

To Whom it May Concern:

You are hereby notified that Alea Kennedy, the Complainant in the above-referenced matter, has filed a complaint of alleged discrimination with the Colorado Civil Rights Division, naming **Modivcare Solutions, LLC** as the Respondent. Pursuant to the Colorado Civil Rights Commission's Rules, attached to this correspondence is a copy of the charge of discrimination.

Also attached are various Requests For Information ("RFI") from the Division regarding this matter. **Modivcare Solutions, LLC is required to provide a response to the Division's enclosed RFI by no later than thirty (30) days from the date of this letter.** Please send the RFI responses, including a position statement and any supporting documents, witness statements, or other exhibits, to the Division via email to DORA_CCRDInvestigations@state.co.us
or via U.S. Mail (1560 Broadway, Suite 825, Denver, CO 80202), fax (303-894-7830), or hand-delivery (DORA Welcome Center located on the first floor of 1560 Broadway, Denver, CO 80202).

When a charge of discrimination is filed with the Colorado Civil Rights Division, the Division promptly initiates an investigation into the claim(s). Due to the general legal requirements that the administrative processing of this matter must be completed within a certain number of days from the date of filing, your timely compliance in this matter is essential. The data that you submit in response to this request may be sufficient for us to complete our investigation. However, if we need additional information at a later date, we will count on your continued cooperation to help us resolve this complaint as efficiently as possible. If you have any question about the investigative process, please contact the Investigator assigned to this matter through the Division's main telephone line at (303) 894-2997.

**Additionally, please note that the Division offers free mediation services to the parties so that they have the opportunity to try to reach an agreement to resolve and dismiss the complaint. This Alternative Dispute Resolution ("ADR") process often provides a much faster and more cost-effective resolution of the complaint than the full investigative process.** If you have any interest in mediation of this matter, or any questions about the Division's ADR process, please either contact the assigned Investigator, or send an email the Division's ADR Unit at DORA_CCRDADR@state.co.us

Colorado Civil Rights Division

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

1560 Broadway Street, Suite 825
Denver, CO 80202

## REQUEST FOR INFORMATION

A complaint has been filed with the Colorado Civil Rights Division ("CCRD" or "Division") against your company. For more information on the Division or the administrative process, please visit our website at ccrd.colorado.gov/the-complaint-process

So that we may deal with this charge in an efficient manner, please submit the following specific, written information and/or documentation by the deadline indicated in the service letter. Your failure to do so may result in CCRD issuing a finding based on the available evidence.

Please be advised that you are expected to provide a complete response to each question. If you, or your representative, believe that a question is impermissible, is not relevant, or is overly broad in scope, do not simply object and/or decline to answer. Rather, **contact the assigned Investigator to discuss your concerns**. Failure to fully answer all questions will be viewed as a refusal to cooperate. The Investigator is always willing to discuss the scope of the request, and in most instances, can narrow, modify and/or clarify the request(s) to ensure that only information essential to the specific facts and allegations of your case is required. You may find contact information for the Investigator assigned to this matter via email to DORA_CCRDInvestigations@state.co.us or by calling CCRD's main line at (303) 894-2997.

**SUBPOENA POWER NOTICE:** You should be aware that the State of Colorado's Anti-Discrimination statute grants the Director of the Colorado Civil Rights Division the authority to subpoena witnesses and to compel the production of books, papers and records relevant to any unfair employment practice C.R.S. 24-34-306(2)(a). Such subpoena is enforceable in the district court in which the alleged discriminatory practice occurred. Subpoena authority is exercised only when, in the judgment of the Director, the Respondent's failure to voluntarily cooperate makes it necessary.

**NEGATIVE INFERENCE NOTICE:** You should also be aware that your failure to comply with a request for information may create a rebuttable presumption that the particular information requested is harmful to your position. Colorado Civil Rights Commission Rule 10.5(B)(2).

The information submitted by both parties is considered in deciding the merits of the allegation(s). This information is made available to the opposing party, who then is given an opportunity to review and provide a response. The information is not made available to the public. Colorado Civil Rights Commission Rule 10.5 (E) and (F).

**Please provide the following:**

1. The full and correct name of the company if it is incorrect on the administrative complaint. Please specify your form of organization (e.g. LLC, PC, Ltd). Identify any person who should be copied on the correspondence and provide his or her contact information (e.g. e-mail address, telephone number). In addition, if there is another company or entity who you believe may be jointly responsible for the alleged adverse action (e.g. a parent corporation, staffing agency, etc.), please provide identifying information.

2. Describe the nature of the business (type of goods or services it provides).

3. Indicate if there are currently more or less than fifteen (15) employees. If there are less than fifteen (15), provide a list of all persons employed within the past two-year period. For each cited person, indicate his or her dates of employment. (For cases in which age is involved, indicate if there are more or less than twenty (20) employees).

4. A position statement which responds fully and specifically to all allegations of discrimination presented in the Charge of Discrimination. If possible, please provide the statement in chronological order of events. Include the following:

    a. Detailed description of all events surrounding the allegations of discrimination.
    b. The name, position title and protected class information for each person involved in these events. (For example, if the Complainant has alleged discrimination based on age and race, provide age and race information for each person listed. If the Complainant alleges age and sex, provide the age and sex of each person listed.)
    c. If the Complainant alleges adverse employment action (such as termination or discipline) was taken against the Complainant, provide justification for such action and accompanying documentation (such as disciplinary actions, internal investigation, etc.) to support such reasoning.
    d. For some protected classes, such as (but not limited to) disability, sexual orientation, religion, and pregnancy, indicate when you became aware of the Complainant's protected class. (e.g. if the Complainant alleges a disability, when were you made aware, if at all, of such disability?)
    e. For retaliation claims, indicate when you became aware that the Complainant engaged in a civil rights protected activity and what action, if any, you took in response to this civil rights protected activity. Protected activity is: 1) opposing unlawful discrimination (e.g. complaining of discrimination to the employer or other member of management, EEOC, CCRD, etc.); 2) requesting an accommodation related to a protected class (e.g. asking for a disability, religious, or pregnancy-related accommodation); or 3) participating in a discrimination-related matter (e.g. providing information/serving as a witness in a civil rights-related investigation or trial).
    f. Provide the name, job or position title, and protected class information for the individual(s) who made the personnel decision at issue.
    g. Provide statements, preferably affidavits, from current employees who can support the responses you make in your position statement. In particular, provide statements from: 1) decision-makers in personnel actions at issue, and; 2) individuals alleged to have

harassed or otherwise discriminated against the Complainant. If a decision-maker or alleged harasser is no longer employed, provide last known contact information, the separation date, and a brief reason for the separation.

5. The job description for the position to which the Complainant was or is employed, or for which the Complainant applied and was allegedly not hired, promoted, etc.

6. A copy of the Complainant's complete personnel records, including accolades, warnings, reprimands, and evaluations.

7. A copy of the Employee Handbook applicable during the Complainant's employment. Please note if an Employee Handbook does not exist.

    a. Provide copies of all relevant policies. For example, if harassment is involved, provide a copy of the harassment policy. If discipline is involved, provide a copy of the progressive discipline policy. Please note if the requested policies are not in existence.

8. Provide copies of applications and/or resumes for either the person or person(s) who replaced the Complainant or, if applicable, those who were promoted, hired or rehired instead of the Complainant.

**PLEASE NOTE:** The Civil Rights Division **requires** comparative workforce data related to this claim, and as such, we may request information regarding the demographics of your workforce. In many such instances, the Division is unable to finish processing the claim without such information as it is essential toward conducting a thorough analysis of the Complainant's allegations. As such, please provide comparative data relevant to the claim whenever asked to do so. The Division is also aware, however, that some demographic information may not be recorded in the ordinary course of business (such as employees' religious beliefs or sexual orientation information). Thus, when such information is requested, but is not of the type commonly recorded, you must contact the Investigator on the case to discuss the specifics of what must be provided. Likewise, where a large workforce is involved, contact the Investigator to discuss a possible narrowing of the scope of information requested, such as limiting data to a particular work location, department, or position title.

**For the following items, provide information for one (1) year preceding the date that the Charge of Discrimination was filed.**

9. Provide a list of all current employees, with relative protected class information, name, employment dates and job or position title.

10. If applicable, provide a list of all employees who were hired or rehired for the position sought by the Complainant. Specify each employee's relative protected classes (for example, if the Complainant has alleged discrimination based on age and race, provide age and race information for each person listed.). Also provide that person's name, dates of employment, and the job or position title.

11. If applicable, provide a list of all employees who were subjected to similar adverse employment actions[s] as alleged by the Complainant (suspension, demotion, discharge, etc.), whether or not such action was implemented for the same reason it was taken against the Complainant. For each individual identified, specify, their relative protected class[s], names, dates of employment, job or position title, and reason for which the adverse action was taken. For example, if the Complainant alleges suspension leading to discharge, provide a list of individuals who were also suspended and discharged during the relevant time period.

12. If harassment or a complaint of discrimination to management or a supervisor is involved: Provide a list of all employees who complained of discrimination or harassment, the date of the complaint, the individuals involved, and the relative protected class information for the complaining employee and the persons of which he or she complained. Also, provide details regarding the resolution of the complaint.

| **COMPLAINT OF DISCRIMINATION**<br>*The Privacy Act of 1974 affects this form.*<br>*See Privacy Act Statement before completing this form.* | EEOC Complaint No.<br>32A-2023-00681<br>CCRD Complaint No.<br>E2300019428 |
|---|---|

***COLORADO CIVIL RIGHTS DIVISION AND EEOC***

| Name *(Complainant)*<br>Alea Kennedy | | (Area Code) Telephone<br>(234) 650-1977 |
|---|---|---|
| Street Address<br>4550 E. Cherry Creek S. Drive,<br>#407 | City, State, and Zip Code<br>Glendale, CO 80246 | County<br>Denver |
| The Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency who discriminated against me is: | | |
| Name (*Respondent*)<br>Modivcare Solutions, LLC | Number of Employees<br>15+ | (Area Code) Telephone<br>(720) 258-2219<br>Email Address<br>Stephanie.hale@modivcare.com |
| Street Address<br>6900 E. Layton Avenue,<br>Suite 1200 | City, State, and Zip Code<br>Denver, CO 80237 | County<br>Denver |
| Discrimination Based On:<br>Sex (Female); Religion (Judaism); Disability (Mental & Physical); Retaliation | | Date Most Recent Discrimination Occurred:<br>March 21, 2023 |

**I.** **Jurisdiction**: The named Respondent is subject to the jurisdiction of the Colorado Civil Rights Division and the Equal Employment Opportunity Commission, pursuant to the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, *et seq.*), as reenacted, and Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e, et seq.).

**II.** **Personal Harm:** On or about August 30, 2022, and thereafter, I was harassed based on my sex (female), my religion (Judaism), my physical disabilities (nerve pain disorder & spine injury) and/or a perceived mental disability. On or about September 22, 2022, and thereafter, I was denied equal terms and conditions of employment based on my protected classes. On or about March 14, 2023, I was denied a disability accommodation based on my protected classes and/or in retaliation for engaging in protected activity. On or about March 21, 2023, I was laid off based on my protected classes and/or in retaliation for engaging in protected activity.

**III.** **Respondent's Position:** Unknown.

**IV.** **Discrimination Statement:** I believe I was unlawfully discriminated against because of my protected classes and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA). 1.) I began employment with the Respondent on or about August 1, 2022, performed my job duties satisfactorily at all times, and my most recent job title was Governance Analyst II. 2.) On or about August 30, 2022, I was harassed based on my protected classes when Respondent employee, Marlene Bizub (title unknown) ("Bizub") pulled my pants down in the break room and inserted a catheter into me, in front of co-workers. 3.) In or around September 2022, I was harassed when Director of IT Governance, Risk, and Compliance, Bill Randall ("Randall") started regularly pinching my vulva, stating that he wanted to give me "a

pain no one can see." 4.) On or about September 1, 2022, I was harassed when Risk Analyst I, Waleed Esslam ("Esslam") began violently shaking my chair anytime he walked by my desk, causing symptoms of my disabilities to be exacerbated. 5.) On or about September 7, 2022, Esslam told me that Senior Governance Analyst, Judy Hess ("Hess") instructed him to shake my chair. 6.) On or about September 7, 2022, I was harassed when I heard Randall tell Esslam that I was a "Jewish bitch." 7.) On or about September 8, 2022, I was harassed when Bizub dragged me out of the bathroom with my pants down, exposing me to co-workers. 8.) On or about September 20, 2022, I was harassed when Randall called me into a meeting with Director of Service Operations, Heather Ogletree ("Ogletree"), and they proceeded to touch each other in a sexual manner in front of me and make several references to the sexual intercourse they had the night before. 9.) Thereafter, I left the meeting and heard Randall and Ogletree have loud sex in the office near my workstation. 10.) On or about September 22, 2022, I was harassed when Hess called 911 and stated "Alea is going crazy, she needs the police," despite the fact that I was just sitting at my desk, working. 11.) On or about September 27, 2022, I was denied equal terms and conditions of employment when I noticed that my ex-husband had been given access to one of my Respondent accounts, notified Randall, and Randall failed to do anything about it. 12.) On or about September 28, 2022, I was harassed when several co-workers forced me to attend the Respondent's Oktoberfest party, despite the fact that I had refused to go due to it occurring during the religious holiday Rosh Hashana. 13.) Thereafter, CEO, Heath Sampson called me a "kike" and Hess called me a "Jew" in a derogatory manner. 14.) On or about October 28, 2022, I was denied equal terms and conditions when Randall stated that I was "quiet fired," meaning he had intentionally stopped giving me assignments. 15.) Thereafter, I was harassed when Hess forced me to lick her vagina and IT Compliance Manager, Katelin Kazazian started smelling my vagina and reporting her "findings" to Randall. 16.) On or about December 5, 2022, I was harassed when I heard Randall tell another co-worker that I am a "crazy person," and that is why we weren't "together." 17.) On or about December 16, 2022, I was denied equal terms and conditions when Randall told a co-worker "Alea's here, if anything happens, we're told to call 911," which I understood to mean that I was a liability based on my protected classes. 18.) Thereafter, Randall told me that I "needed to contribute something to the team," despite contributing a lot of work. 19.) On or about December 27, 2022, I was harassed when Esslam openly complained about Jewish people in a common workspace. 20.) On or about January 10, 2023, I was harassed when Randall told Esslam "don't worry about what Alea says, she is just a Jew." 21.) On or about January 23, 2023, I was harassed when I learned that Randall had been telling co-workers that I am a "crazy person." 22.) On or about January 26, 2023, I was harassed when Randall repeatedly called me a "Jew" in a derogatory manner during a meeting. 23.) Thereafter, I was denied equal terms and conditions when Randall told me that I would never get a raise. 24.) On or about January 30, 2023, I was harassed when Randall stopped a meeting to tell everyone that I am mentally ill. 25.) On or about February 15, 2023, I was harassed when a co-worker told a "blue" story about their weekend and Randall responded by stating "that was wild, I bet Alea was wilder," which I understood to be a comment on my sexuality. 26.) On or about February 17, 2023, I was harassed when Randall began pressing hard on my shoulders when he passed my workstation, resulting in a herniated disc diagnosis on or about February 19, 2023. 27.) On or about March 1, 2023, I was harassed when Randall stopped a meeting to state that I "need[] surgery in the head." 28.) On or about March 2, 2023, I was denied equal terms and conditions when Randall docked points from my annual performance review, which I believe was due to my rejections of Randall's previous sexual/romantic advances. 29.) On or about March 14,

2023, I engaged in protected activity when I requested the disability accommodation of time off from work to attend an emergency medical procedure that same day. 30.) Thereafter, I was denied a disability accommodation based on my protected classes and/or in retaliation for engaging in protected activity when Randall ignored my request. 31.) On or about March 21, 2023, I was laid off based on my protected classes and/or in retaliation for engaging in protected activity when Randall and HR Director, Stephanie Hale discharged me, stating that the Respondent was “restructuring.” 32.) I believe that I was discriminated against based on my protected classes and/or in retaliation for engaging in protected activity.

**V. WHEREFORE:** The Complainant prays that the Colorado Civil Rights Division grant such relief as may exist within the Division’s power and which the Division may deem necessary and proper.

*I want this charge filed with both the Equal Employment Opportunity Commission and the State or local agency, if any. I will advise the agency if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.*

***I understand that, by filing this complaint, I consent to the disclosure of the foregoing information to the above-named Respondent.***

**I declare under penalty of perjury that the foregoing is true and correct.**

Date Complainant (Signature)

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

**Case Name:** Alea Kennedy v. Modivcare Solutions, LLC
**Charge Received Date:** 6/14/2023 12:00:00 AM
**Complaint Number:** E2300019428
**Case Type:** Employment

# Statement of Discrimination

I was retaliated against on 3/21/23 when I was terminated from employment from my job as Governance Analyst II at Modivcare. I was directed to make this complaint to this agency by OSHA and the EEOC, who were confident that I had valid claims pertinent to this agency. The retaliation involved discrimination on the basis of my diagnosis of sciatica, my Jewish ancestry, my sexual harassment by my boss, and the presumption of and treatment for a disability where none ever existed, by a non-medical actor. I've documented these claims with hundreds of pages of timestamped notes, nearly a thousand photographs and screenshots, and stand on my credentialing as an intelligence agent and FTC whistleblower in substantiation of my case. The following is a Google document containing an detailed timeline of events leading to that retaliation: https://tinyurl.com/AleaKennedy I was retaliated against on 3/21/23 when I was terminated from employment from my job as Governance Analyst II at Modivcare. The following is a timeline of events leading to that retaliation: Attendant Facts regarding American Lighting: I caught Marlene Bizub, a woman who faked having studied psychology and wrote that she believes that "would benefit from behavioral modifications not requiring any insight," leaving my apartment in March 2022, just before starting work at American Lighting. I then caught her walking through flour at my next apartment, having moved to avoid her. Please compare the footprints and footwear, as photographed. When I made my boss at American Lighting, Jen Barry, aware that I had a stalker, she chased me to my restraining order hearing and told the judge that I was crazy. Jen Barry ended up sniffing my crotch in a conference room, which set the precedent for Modivcare's escalating to this severe a degree. Police reports exist in both Aurora and Denver as regarding Bizub's stalking, and I called the state police and FBI daily for assistance. The Eisner Institution is not a real school, but Marlene Bizub's fraud. Please also see my report regarding Marlene Bizub at: tinyurl.com/ms94xksb 5/13/22: From notes, as regarding Jordan Ferree: "Jordan said I didn't teach you how to get to work either." He and Marlene Bizub had chased me into work that morning and every other. 6/23/22: Fired from American Lighting after experiencing the exact same circumstances as at Modivcare. These conditions were also present, with increasing intensity as I changed jobs, at my prior two positions (Glen at the Park and Transcat). I found a flashlight; a piece of marketing swag, containing the words National Security Agency, at this company. In pursuit of a corrected W2, I

requested the return of this flashlight from this company to non-response. Modivcare Timeline (there are many further documented incidents): 7/19/22: Bill Randall, IT GRC Manager and my direct supervisor, phoned to offer conditions of employment. Bill told me directly that I would be eligible for a year end bonus and that he would "get me to the high end of my salary range quickly," which he assured me would take place in advance of my Spring performance review and before the end of the calendar year. 7/20/22-7/26/22: Received and accepted a written offer of employment. 7/31/22: Then-CEO Dan Greenleaf quits from my apartment the night before my first day in protest of what must have been a planned human rights abuse. 8/1/22: My first day at Modivcare. Caught a screenshot of Marlene Bizub (my reported stalker) and previous coworkers in the building, which was altered, and evidence of erased from Microsoft Teams, after my transmission to the FBI and my attorney. Bizub was allowed to treat me against medical advice and without licensure in the building from that day onward. I have never had any attendant illness and declared no disability on my application. In my first fifteen minutes in the building, a coworker named Khristine Johnson (?) demonstrated that she knew of my personal hobbies, saying that yoga would be good for me with all of the physical activity that I pursue. She and I had only ever met the night before in the context of Greenleaf's quitting from my apartment. I witnessed former coworkers including the aforementioned in the building frequently, along with Marlene Bizub and my former attorney Natalie Boeckx, who established the same patterning at Glen at the Park. My coworkers once walked me past a woman identical to me on the street and remarked on how I did not notice. This is documented to timestamp in my notes. Track marks appear every single night at every venipuncture site available, and I document these obvious interferences extensively. In and of themselves, they suggest the undeniable nature of the interference. I often document these transpiring at my various workplaces. 8/2/23: Bill remarked "Alea we got you a psychiatrist" and "we're trying to get you to fuck up and blow this job." Kristina Hamlin-Forrester, an HR person, had entered her cellphone number into my laptop overnight. Thousands of such incidents will be confirmed by my laptop (not the original, company-issued laptop)'s biometric data. Modivcare does not acknowledge collection of such data, and lied about it to me both directly and indirectly. Travis Landsdell, CISO, erased this phone number from my laptop personally. Work disappeared from my laptop on a frequent basis, especially through this period. I documented such "glitches" extensively, and made both my superiors and CSIS aware of their congruence with the "glitches" that I experienced at American Lighting, Transcat, and Glen at the Park. This phenomenon was acknowledged and laughed over in a department wide meeting by Travis Lansdell. My work was being deleted overnight, so that my body of assignment became a Sisyphean task. Bill and Travis gaslit me over these frequent occurrences that they characterized as being "glitches", which included ampersands being substituted for the word "and". The "glitches" suggested missing time and chemical blackbagging to human trafficking, rather than technological concerns. The gaslighting extended to an occasion on which my abusive, violent ex-husband's email credentialing was entered into my laptop overnight. This gaslighting led to my working eighty hour weeks for fear of retaliation. On one occasion, a Manager in my department, Katelin Kazazian, took my phone from my hand and transmitted a photo from my personal collection over Microsoft Teams. A witness, Hector Posada, was laid off in the next round of layoffs, and the company was rehiring for his position when I was laid off. Permissions were set as such that this would have been impossible in the absence of Katelin's

accessing the Photos app on my phone. I brought this to Bill Randall's attention, and was gaslit. During this period of time, I planned and purchased Bill Randall's birthday cake surprise, which was presented to him at work. Bill opportuned to show me a photograph of his brother's RV on this occasion. I had seen and photographed this RV outside of my apartment in Aurora, CO. I'm not sure whether I retain record of this photograph, but he seemed to want me to ID the vehicle and the imposition. 8/24/22: at 3:50 pm, Bill remarked "Alea I was never planning on letting you be on my team if that isn't obvious." 8/30/22: Marlene Bizub is allowed into the building, and in the break room, publicly and before the assembled company, is allowed to catheterize me with my pants down past my knees. 9/2022: Bill begins gouging and pinching my vulva at my desk frequently, as he describes, "to give me a pain no one can see." These incidences are recorded extensively and timestamped within my notes. 9/6/22: Judy Hess, a senior coworker, told a third party over the phone in Spanish about how it was decided I would be compensated under market value because I would be receiving alimony. I recorded this exchange. There may also be an W2 violation as I paid ⅓ of my income to taxes and received a low return. I made Modivcare's HR Department aware of this after my first full paycheck. They allowed for a rectified W2 filing that did not acknowledge my alimony. I believe that this May have been how Judy Hess ascertained the privileged information regarding my alimony, as she revealed in the recorded phone conversation, as I never uttered or disclosed any information regarding my alimony payments prior to this occasion, at Modivcare. At 10:24 am, a coworker named Waleed Esslam shook my chair, to brutally exacerbate my sciatica. He did this repeatedly through this time period, beginning 9/1/23 when he initiated this behavior in nearly causing a heart attack. 9/7/22: Waleed reports at 8:06 am that as to the chair shaking assaults; "Judy has me do it when you cross your legs. 9/8/22: I was dragged out of the bathroom at work and exposed in the nude each time that I attempted to use the bathroom privately at Modivcare, always through Marlene Bizub's interference. On this date, the door to my bathroom at my apartment was locked from the inside, after a day of not being allowed to use the bathroom privately. This was also the date that I saw a former coworker walking across the bridge to my office, with whom I hadn't intentionally interacted since 6/2021. I reported both incidents to the FBI. 9/13/22: at 8:55 am, I tip to the FBI, "I am being injected constantly at Modivcare and am having difficulty breathing. They are inducing medical emergency. Won't you please help? I am pleading for my life." 9/20/22: Bill forced me into a meeting with a coworker named Heather Ogletree, with whom he had sex in a glass-walled conference room just after our meeting, audibly, until I left the building and made a report to the FBI. 9/22/22: I noticed Judy recording me throughout the day. During this time, though it was erased from my notes, Judy would begin recording and dial 911 to tell the police that I was "going crazy", and I would be assaulted at my desk. Throughout this period of time, Marlene Bizub was showing me videos that would qualify as child pornography, produced in the Modivcare building. These videos contained images of my children with Brian Haner Jr, and Bizub described the costume accessories she provided them with as allowing for their uninhibited performances. There are five instances regarding child pornography in Bill's phone in my notes. One instance describes Travis Lansdell's promise to keep it covered up, and another includes Bill's admission to retaining such images before the CEO. I also have an instance recorded on which I transmitted such images from Bill's phone to the FBI. 9/27/22: my ex husband's email address was entered into a login overnight, suggesting that he had physically accessed my computer. I was gaslit over this by

Bill. Researching this event would have made a break in my custody case against my violent, abusive ex husband. 9/28/22: The CEO publicly called me a “kike” at the office Rosh Hashana Oktoberfest party. At 10:16 that morning, Judy made an antisemitic comment to another, under her breath. She knew that I’m Jewish based on prior conversations and a comment I made the day before. I reported this to the Anti-Defamation League. 10/19/22: I noticed that I wasn’t given the same digital notebook equipment as both of my colleagues, who lied about who granted them the asset. 10/28/22: At 10:21, Bill said that I was “quiet fired.” Around this time I requested work commensurate for proving my value to the department, and Bill responded that I would never progress in his department beyond the level of menial work as a result of my conflict with Judy. On this occasion, he blamed me for the conflict, and did so at my desk before other colleagues. Throughout this time period, I was subjected to various gross exhale impositions. Judy Hess would force me to lick her vagina. Katelin Kazazian would sniff my vagina and describe her findings. I was subjected to more than one forced gynecological examination at work, in addition to Marlene Bizub’s public catheterization. I was also exposed naked publicly each time I used the bathroom (normally) in the workplace. I have a CT scan of the implant that pertains to my DOD earmark. 11/9/22: Reached out to Stephanie Hale, who was promoted to HR Director in the course of our dealings, regarding Judy’s suspected thefts from my personal belongings, with photographic substantiation. 12/1/22: Meeting with Stephanie Hale in person in which Judy’s knowledge of my alimony and personal thefts were discussed. 12/5/22: Bill Randall told a peer, Tommy Johnson, that he believes that I am “a crazy person” and “that’s why we’re not together”. Bill then attended lunch with Judy just before a meeting he set between the three of us. Judy returned to her desk intoxicated, and creating a disturbance over a sound of flatulence. I have photos and video of Judy nodding off at her desk, masturbating, and using drugs at her desk. A photo of her openly vaping in the office was deleted from my phone. In this meeting, I was blamed equally for the “conflict” between Judy and I by Bill. He did not acknowledge the thievery. 12/8/22: From notes: “12 saw Jen barry leaving as Jordan and Zachary jumped out from building entrance.” 12/12/22: Bill told Judy that there was “nothing to be concerned about,” so I made Stephanie aware. I also transmitted photographs of my personal belongings being disturbed when I was away from my desk, on multiple occasions, from this point forward. 12/15/22: Bill’s wife accuses me of “living the free, single life” and addresses me as “the Lady in Red” for the first time at an office Christmas party outside of work. 12/16/22: I overhear Bill say to the self-proclaimed active duty CIA agent in the office, Michael Adamson, “Alea’s here; if anything happens we’re told to call 911”. At the end of Bill’s meeting, he said “we need to work something out because I really need you to contribute to the team.” On that day I saw Marlene Bizub in the background of Teams meetings. I also met with Stephanie again on this date regarding the aforementioned meeting with Bill and Judy. 12/18/22: Bill asks in our weekly meeting whether “maybe we can listen to music together sometime.” I did not respond. 12/27/22: Waleed begins openly complaining at his desk about the Jews. 1/10/23: Bill remarks to Waleed on my being a Jew. 1/23/23: a colleague, Brandon Ice, tells me that Bill will pretend that I am a crazy person to anyone who will listen. 1/26/23: I request a raise at my annual performance review, and Bill advises that because of the conflict with Judy, I will never receive a raise or promotion in his department. 1/30/23: Bill stops a meeting with the Legal Compliance team to advise the team that he believes that I am mentally ill. 2/15/23: Bill remarks during

a Teams meeting with the entire GRC team “that was wild; I bet Alea was wilder.” 2/19/23: I develop a severe, secondary case of sciatica, without explanation, and overnight. It is eventually diagnosed as a herniated disk, which is distinct, and has been documented as being distinct, from my original case of sciatica. The 1 cm hernia will likely require surgery and represents a far more severe injury than the original case of sciatica. I have timestamped documentation of Bill’s inducing this injury and reinforcing it frequently, with presses to my shoulders, outside of work and in the observation of the public. 2/20/23: Bill’s wife once again refers to me as “the Lady in Red” at an out of office dinner, where Bill hugs me and discusses my name with his manager constantly. 3/1/23: Bill stops a Teams meeting with the entire GRC team to publicly opine that he “thinks I need surgery in the head.” 3/2/23: Bill provides my annual performance review, in which my “conflict” with Judy is described as the reason for my not receiving a perfect score and thus consideration for a promotion. 3/3/23: I bring concerns regarding my performance review’s unfairly affecting my compensation to Bill’s boss; Modivcare’s CISO Travis Lansdell. Travis schedules a meeting for the following week. 3/7/23: Travis meets with me and hears my concerns, including Bill’s remarking that I would never be promoted as a result of my conflict with Judy. He requests information as to why Bill might offer compensation that he could not allocate, and I provided the story of Bill’s advances as explanation. I also make Travis aware that Bill has begun openly laughing at me through a work meeting. 3/14/23: Stephanie sets an appointment to follow up on my discussion with Travis. She takes inventory of my recounting and asks “how it made [me] feel.” This meeting was recorded. 3/17/23: Stephanie sets a follow up meeting to discuss my “performance review concerns,” as stated. She said that she discussed my concerns with Bill and Travis, that to the best of her knowledge there was no performance improvement plan in play, and concludes the meeting with a prepared statement on the illegality of retaliation. I waited most of the week for the meeting to transpire (the meeting took place on 3/17/23), only attending work to meet with Stephanie. Bill offered no time off during this period, and made no offer of adaption. He was difficult to get ahold of for approving time off, and offered no time off in my scheduling of an emergency operation. This was the first time out of the office I took (without making an effort to attend work in person, prior to leaving ill) through my tenure at Modivcare, and was a significant portion of my workweek at ten hours. He also asked me to announce my appointments to the Team, even when they transpired over scheduled lunch breaks. 3/21/23: my biweekly meeting with Bill was rescheduled for the morning, and before appearing on camera, Bill made detailed inquiry to my pain level and the health of my back. Stephanie appeared on camera as Bill did, and my employment was terminated. The cause given was that of “restructuring”. Later that evening, had sex with the company’s paralegal as his superiors and my former ones walked in and interacted with me. I was injected during these engagements. 3/27/23: Stephanie Hale thanked me for a document (I presume she thought that I had signed and returned the document) in an email chain containing severance documents. I was paid a sum different from the one described on any prior occasion, and never returned any signed documents. 4/4/23: Stephanie Hale transmitted a document entitled “Separation Memo” which described my last day as being 4/4/23 but my wages as being less than my normal income, as described in the Salary/Wages for Last Week Worked field. This implies that I was either shorted in my vacation pay or my vacation pay docked against my final two weeks’ pay. Later that day, Bill chased me to my spinal doctor’s appointment, where I was diagnosed with a second injury

that spontaneously appeared overnight; both of which I attribute to Bill Randall. He had beaten me before the appointment, and a 911 call from Michael Adamson made at approximately 5:15 as I was driving home substantiates the interaction. 4/5/23: On my way to physical therapy, Bill Randall and Heath Sampson chased me and suggested that I take a job at Hooter's (Bill). Another Bill Randall crush injury at 4:30 pm in my home apartment kitchen, as reported to the FBI. 4/6/23: Stephanie Hale leaves a voicemail tasking me to call back without any "please". My termination transpired on 4/4/23 and I continue to be requested work by the company's HR Director. Modivcare retain a copy of my daughter's Christmas photograph and my back brace, to this day. 4/8/23: Followed up via email regarding the pay shortage with Stephanie Hale. 4/10/23: Trafficked back to Transcat overnight. Bill Randall beating 6:05 am with beatings yesterday as well; all reported to the FBI. 1) Relevant Parties and their job titles: Travis Landsdell, CISO Bill Randall, GRC Director Katelin Kazazian, GRC Manager Judy Hess, Senior GRC Analyst Michael Adamson, Senior GRC Analyst Stephanie Hale, HR Director 2) Date of Hire: 7/25/22 or thereabouts; Start Date 8/1/22; Layoff Date 3/21/23; Final Day: 4/4/23 3) I believe that my documentation at tinyurl.com/aleakennedy demonstrates that the events that transpired at Modivcare were part of a larger civil rights issue. 1) Yes—I brought these issues to Stephanie Hale and Travis Lansdell respectively, with extensive documentation thereof. Nothing productive was accomplished. 2) Yes, Judy Hess (an older Hispanic woman with whom Bill Randall had a personal relationship). 3) Layoff for staff reduction. No, I had a positive performance review.

EEOC FORM 131-A **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| | |
|---|---|
| Modivcare Solutions, LLC<br>6900 E Layton Avenue, Suite 1200<br>Denver, CO 80237 | PERSON FILING CHARGE<br>Alea Kennedy |
| | THIS PERSON<br>Claims to be aggrieved |
| | EEOC CHARGE NO.<br>32A-2023-00681 |
| | FEPA CHARGE NO.<br>E2300019428 |

**NOTICE OF CHARGE OF DISCRIMINATION in Jurisdiction where a FEP Agency will initially process**

*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

The Americans With Disabilities Act of 1990 (ADA) and Title VII of the Civil Rights Act of 1964 (Title VII)

HAS BEEN RECEIVED BY

Colorado Civil Rights Division and sent to the EEOC for dual filing.

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency.

For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

ENCLOSURE(S): Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION
Disability, Religion, Retaliation and Sex
**See enclosed copy of Charge of Discrimination**

| DATE | NAME/TITLE OF AUTHORIZED OFFICIAL | SIGNATURE |
|---|---|---|
| 06/21/2023 | Melinda Caraballo,<br>Acting District Director | |

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14 Preservation of records made or kept.** Where a charge... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 207(f) of GINA, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

**COLORADO CIVIL RIGHTS DIVISION COMPLAINT OF DISCRIMINATION FILING DATE VERIFICATION**

ALEA KENNEDY,
Complainant,

v.

Modivcare Solutions, LLC,
Respondent.

Complaint No.: E2300019428

I, Benjamin Ward, an employee of the Colorado Civil Rights Division (CCRD), verify that the above-referenced Complainant filed a specific, written Complaint of Discrimination with the CCRD on June 14, 2023.

**The above-referenced Complaint was submitted to the CCRD via:**

☐ CaseConnect, ☐ Mail, ☒ Email, ☐ Fax, **OR** ☐ Hand-delivery

**Dated this 14th day of June, 2023.**

*/s/ Benjamin Ward*
Signature of CCRD Employee

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

Notice

TO EMPLOYERS, REAL ESTATE AGENTS, BUSINESS OWNERS, ET AL

Please be advised that Rule 20.5, which deals with the preservation of records relevant to civil rights charges, will affect all Respondents named in any charge or complaint that has been filed with the Colorado Civil Rights Division.

**The text of General Provision Rule 20.5 - Preservation of Records:**

(A) Retention of Records During Processing of Charge.
Whenever a charge of discrimination is filed with the Division, all parties shall maintain all relevant records in their custody, control, or possession until final disposition. Relevant records include, but are not limited to, the following: personnel or employment records of a Charging Party and of all employees holding similar positions; applications or test papers and assessments of all candidates for the positions sought by the Charging Party; payroll records; handbooks; registration records; offers; leases; contracts; tenant files; rental applications; loan and purchase files; advertisements; data regarding protected classes; disability-related and medical records; policies and procedures; notices; phone records; bank and accounting records; photographs; videos; correspondence; emails; electronic records; and other business or institutional records relevant to the allegations of the charge. Final disposition of the charge or complaint occurs when the statutory time periods for all appeals have expired.

(B) Rebuttable Presumption.
The failure to comply with this regulation shall create a rebuttable presumption.

If you have any questions regarding General Provision Rule 20.5 or any other Rules or Regulations of the Colorado Civil Rights Commission, please contact one of the Division's offices.

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

Charge No. E2300019428

Alea Kennedy
4550 E. Cherry Creek S. Drive #407
Glendale, CO 80246 Complainant

Modivcare Solutions, LLC
6900 E. Layton Avenue, Ste 1200
Denver, CO 80237 Respondent

## DETERMINATION

### Jurisdiction

Under the authority vested in me by C.R.S. 24-34-306(2), I conclude from our investigation that there is insufficient evidence to support the Complainant's claims of discrimination. As such, a **No Probable Cause** determination is hereby issued.

The Respondent is an employer within the meaning of C.R.S. 24-34-401(3), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 4 have been met.

The Respondent is a broker of non-emergency medical transportation programs for state governments and managed care organizations. The Respondent's services range from call center management, network credentialing, vendor payment management, and non-emergency medical transport management. The Respondent operates in Colorado and employs more than 15 employees.

### Allegations and Defenses

The Complainant alleges that on or about August 30, 2022, and continuing thereafter, she was harassed by coworkers and supervisors based on her sex (female), religion (Judaism), physical disabilities (nerve pain disorder and spine injury), and/or perceived disability (mental). The Complainant alleges that on or about September 22, 2022, and continuing thereafter, she was denied equal terms and conditions of employment based on her protected classes. Moreover, the Complainant claims that in or around March 2023, she was denied a disability accommodation and laid off based on her protected classes and/or in retaliation for engaging in protected activity.

The Complainant was interviewed during the intake process to obtain information and clarification regarding her allegations. The Complaint of Discrimination ("Complaint")

was drafted and served, and the Respondent provided a position statement and response to the Division's Request for Information. The Complainant was given the opportunity to provide a rebuttal statement and did so and participated in an additional interview. The Respondent provided responses to written interview questions.

The Respondent denies the Complainant's allegations of harassment, discrimination, and retaliation, and avers that she and another employee were laid off based on legitimate, non-discriminatory, and non-retaliatory reasons; namely, a reduction in workforce based on business needs. The Respondent avers that the Complainant worked in a hybrid capacity from November 2022 through January 2023, before becoming a full-time remote employee with no physical interactions with co-workers or supervisors. The Respondent adamantly denies that the Complainant ever reported any perceived adverse treatment because of her protected classes; therefore, it contends that she failed to take advantage of any preventative or corrective opportunities the Respondent offers, such as reporting any perceived discriminatory treatment. Additionally, the Respondent denies knowing the Complainant's religion and/or disability status until receiving this instant Complaint, and further denies that she requested any disability accommodations. The Complainant was unable to refute the Respondent's position and/or establish that she was subjected to any adverse treatment because of her protected classes. As such, the evidence is insufficient to support the Complainant's claims of harassment, discrimination, and/or retaliation.

<u>Appeal and Dismissal Information</u>

In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Complainant may appeal the dismissal of the claim to the Commission within ten (10) days, as set forth in the enclosed form.

If the Complainant wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Division, such must be done:

a. Within ninety (90) days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or

b. Within ninety (90) days of the mailing of the final notice of the Commission dismissing the appeal.

If the Complainant does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action. C.R.S. § 24-34-306(2)(b)(I)(C).

On Behalf of the Colorado Civil Rights Division

/s/ Courtney Longtin
Aubrey Elenis, Director
Or Authorized Designee

October 16, 2023
Date

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

# HOW TO FILE AN APPEAL OF THE DIRECTOR'S DETERMINATION

## Commission's Authority

You have been issued a Determination dismissing your case regarding your charge of discrimination. If you disagree with the Director's decision in the dismissal of your charge, you have the right to appeal that determination [C.R.S. 24-34-306 (2)(b)(I)(A)] to the Colorado Civil Rights Commission (Commission). The Commission is a separate and distinct body from the Colorado Civil Rights Division (CCRD). The Commission is composed of seven members appointed by the Governor and one of its many functions is to review properly filed appeals.

The Commission has the option to either:

1) *Uphold* the Director's determination, thus dismissing your case;

2) *Remand* the case to the Division for further investigation on a specific issue; or

3) *Reverse* the Director's determination.

**Only a Complainant may file an appeal of the Director's no probable cause determination. A probable cause finding cannot be appealed by the Respondent.**

## Filing Requirements

**The appeal process is <u>not</u> intended to simply review the evidence already submitted, which formed the basis of the Director's determination.** The Commission will only consider a properly filed appeal wherein:

- *Available, substantial, and relevant evidence exists now that was previously not available, presented, and considered during the investigation; or*
- *There is clear evidence that existing evidence was misinterpreted, or the determination was based on erroneous information.*

**In both, it is your responsibility to submit the above information along with the Notice of Appeal Form.**

## Filing Procedure

**The Notice of Appeal form and relevant documentation <u>MUST</u> be received in the Civil Rights Division's office <u>WITHIN 10 DAYS</u> from the date of the mailing of the Director's Determination. <u>If your appeal is not received within the 10-day time limit, you will lose your right to appeal.</u>** Filling out any other form included in this mailing does not change the 10-day deadline for appeal. If you wish to appeal but cannot file a written appeal within the 10-day time limit, contact the Appeal Coordinator ***before*** the 10-day period is over to request an extension of the filing deadline. A verbal request for an extension must be confirmed in writing and an extension is not official until approved by the Commission or the Commission's designee. Requesting an extension does not mean the request will be approved. Extension requests will be granted for good cause.

If you are asserting that *relevant evidence exists now that was previously not available, presented, and considered during the investigation*, you will need to attach a copy of that evidence with your Notice of Appeal. If you assert that there is witness testimony to support your appeal, please submit a statement from your witness(es). It is not sufficient for you to simply provide the name of the witness(es). The witness statement(s) should include testimony that is specifically relevant to your case and argument. It must also include the current telephone number(s) and address(es) of the witness(es). Witness statements need not be notarized.

If you are asserting that *existing evidence was misinterpreted or the determination was based on erroneous information*, you will need to identify the particular evidence and specific facts that were misinterpreted. You must also specify how this misinterpretation affected the overall case decision. It is not sufficient to simply state that you disagree with the Director's decision.

Upon receipt of your Notice of Appeal, if it is determined that the appeal is either:

**1) untimely;**
**2) you have failed to provide new evidence that was previously unavailable; or**
**3) you have failed to identify specific information regarding a misinterpretation of evidence or erroneous basis for the determination;**

you will be notified in writing that your appeal has been denied. You will also be provided with a Notice of Dismissal, and, in Employment cases, you will be provided with a notification regarding the allowable time frames in which you may file an action in civil court.

If you have submitted the necessary information required for consideration, your case will be reviewed on appeal by the Commission at a regularly scheduled Commission meeting. You will be notified of the Commission meeting date for your appeal review.

General Information

It is not necessary for you to file an appeal in order to exhaust the administrative process. In Employment cases, the Letter of Determination includes the notice of Right to Sue, which allows you to file your case in the civil court having appropriate jurisdiction.

If you are filing an appeal, please return the Notice of Appeal Form and documentation to:

**COLORADO CIVIL RIGHTS DIVISION**
Attn: Appeal Coordinator
1560 Broadway, Suite 825
Denver, CO 80202-5143
By fax: (303) 894-7830
By email: dora_ccrd@state.co.us

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

## NOTICE OF APPEAL TO THE COLORADO CIVIL RIGHTS COMMISSION

**Appeal Instructions:**

If you are filing an Appeal, this form must be submitted **within ten (10) days of the date of the mailing of the Director's determination of no probable cause**. Attach additional pages and/or documents as necessary.

**Charge Number:** ______________________________

**Complainant:** __________________________________________________

**Address:** _______________________________________________ **Apt. Number:** ______

**City:** _______________________________________ **State:** _____ **Zip Code:** _________

**Telephone Number(s):** ___________________________________________

**Respondent:** __________________________________________________

**A. New Information Available**: What evidence is now available that was not available and presented during the investigation? What is the relevance and significance of this information to your case? Please attach copies of the new information, including any witness statements.

**B. Facts in Dispute**: What material facts presented in the Director's determination are incorrect or were misinterpreted? Please attach your argument and documentation to support your claim or make specific reference to evidence previously submitted in the investigation.

NOTE: Failure to state a specific reason or reasons for appeal will result in the automatic denial of a review of your appeal by the Commission.

After it is determined your appeal filing is accepted and warrants consideration, the appeal will be scheduled for review at a regularly scheduled Commission meeting. You will be notified of the date of your scheduled appeal review.

__________________________________________ ________________________

**Signature** **Date**

**Please return this form to:**
Colorado Civil Rights Division
Attn: Appeal Coordinator
1560 Broadway, Suite 825
Denver, CO 80202-5143
Fax: 303.894.7830
Email: dora_ccrd@state.co.us

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

Because your complaint was concurrently filed with the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Federal Civil Rights Act of 1964 and/or the Americans with Disabilities Act, you also have the right to request that the EEOC conduct a Substantial Weight Review of the Determination.

If you have any questions regarding a Substantial Weight Review, please contact:

State and Local Unit
3300 N. Central Ave, Suite 690
Phoenix, AZ 85012
Or by email: Phoenix.Intake@eeoc.gov

If you intend to appeal the Determination, you must do so within 10-days from the date of the letter of determination. If an appeal is filed, you cannot request a substantial weight review by the EEOC until after you receive an appeal decision by the Colorado Civil Rights Commission.

If you do not intend to appeal the Determination, you can request a Substantial Weight Review by the EEOC by sending your request in writing, within 15-days of the date of your receipt of this Determination to the above address.

# CERTIFICATE OF E-MAILING

This is to certify that on **October 19, 2023** a true and exact copy of the Closing Action of the below-referenced charge was *e-mailed* addressed to the parties and/or representatives listed below.

CCRD Case Number:
**E2300019428**

EEOC Case Number:
**32A-2023-00681**

aleamoore@gmail.com

vwoodfork@littler.com

COLORADO
Department of Regulatory Agencies
Colorado Civil Rights Division

David L. Martinez
**Division of Civil Rights**
1560 Broadway, Suite 825
Denver, CO 80202
www.dora.state.co.us

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)
Issued On: 12/04/2023

**To:** Alea Kennedy
4550 E. Cherry Creek S. Drive #407
Glendale, CO 80246

Alea Kennedy v Modivcare Solutions, LLC
EEOC Charge No: 32A-2023-00681

EEOC Representative and email: Robin Campbell
State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo for
Nancy Sienko
Acting District Director

CC:
Littler Mendelson, P.C.
Virginia Woodfork
1900 Sixteenth Street, Suite 800
Denver, CO 80202

## Information Related to Filing Suit Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### Important Time Limits – 90 Days to File a Lawsuit

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### Attorney Representation

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.